[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11682

Non-Argument Calendar

_____

K. H.,

                                                          Plaintiff-Appellant,

*versus*

RITI, INC.,
d.b.a. American Inn & Suites,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-03404-MHC

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

This is a lawsuit brought by a sex trafficking victim, K.H., against Riti, Inc., the owner and manager of the hotel where she was trafficked. K.H. alleges that Riti knew or should have known that K.H. and others were being trafficked at its hotel, but Riti continued to rent rooms to sex traffickers so that it could earn rental revenue. Thus, K.H. alleges that Riti, as a beneficiary of sex trafficking, violated the Trafficking Victims Protection Reauthorization Act's ("TVPRA") civil beneficiary provision. The district court granted Riti's motion to dismiss for failure to state a claim. It held that K.H. failed to allege a necessary element of its TVPRA claim—that Riti took part in a common undertaking or enterprise involving risk and potential profit. After review, we affirm.

## I.    Background

In 2011, K.H. found herself in dire straits.[1] Having recently run away from a group home, K.H. was sixteen years old and homeless. Her situation worsened when she met Darrell Laye, a

---

[1] Because we are at the motion to dismiss stage, we accept as true the factual allegations in K.H.'s complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

man who promised to "help" K.H.[2]  Far from helping K.H., Laye instead took K.H. to American Inn & Suites, a budget motel in Jonesboro, Georgia owned and managed by Riti, and explained to K.H. that he was a pimp and K.H. was now one of his prostitutes.

From 2011 to 2015, Laye coerced K.H. to work as a prostitute, using threats, physical violence, and starvation.  She was sexually assaulted hundreds of times at Riti's hotel.  Laye also trafficked multiple other victims at the hotel for several months at a time.  Laye took the proceeds of the commercial sex acts and used a portion of the proceeds to book future lodging at the hotel.  Laye "would pay in cash for one night at a time, booking the next night's stay before check-out time."  As owner and manager of the hotel, Riti collected rental fees from the rooms in which K.H. was trafficked.

K.H. alleged that Riti knew or should have known that its hotel was being used for trafficking generally, and for K.H.'s trafficking specifically.  K.H. alleged that Riti should have been aware of K.H.'s trafficking because Riti "directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff."

Further, K.H. alleged the hotel is a "notorious hotspot for illicit activity that has been attracting sex trafficking and

---

[2] K.H. alleged that "[u]pon information and belief," Laye is incarcerated and still faces multiple felony charges including aggravated assault, aggravated battery, and cruelty to children.

4                    Opinion of the Court                    23-11682

prostitution ventures for years."  K.H. cited three online reviews reporting prostitution, sex trafficking, and other illegal activities at the hotel.  K.H. also cited four incidents of police responses to reports of sex trafficking at the motel between June and December 2015.  Finally, K.H. alleged that Riti observed most of the signs that both the Department of Homeland Security ("DHS")[3] and the End Child Prostitution and Trafficking ("ECPAT")[4] organization list as specific indicators of sex trafficking.

---

[3] As to the DHS guidelines, K.H. alleged that Riti observed the following: (a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior; (b) persons who lack freedom of movement or are constantly monitored; (c) persons who have no control over or possession of money or ID; (d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party; (e) requests for room or housekeeping services but denial of hotel staff entry into the room; (f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room; (g) extended stay with few or no personal possessions in the room; (h) excessive amounts of sex paraphernalia in rooms; (i) the same person reserves multiple rooms; (j) a room is rented hourly, less than a day, or for an atypical extended stay; (k) attempts to sell items to or beg from patrons or staff; (l) cars in the parking lot regularly parked backward, so the license plates are not visible; (m) loitering and solicitation of male patrons; and (n) persons asking staff or patrons for food or money.

[4] As to the ECPAT guidelines, K.H. alleged that Riti observed the following: (a) paying for rooms using cash; (b) paying for multi-day stays one day at a time, (c) persons escorting various men into the room and lingering until they leave, (d) persons watching the door; (e) room is frequented by different men; (f) insisting on little or no housekeeping; (g) excessively requesting towels and sheets; (h) wearing the same attire or attire that is revealing or inappropriate for the weather; (i) excess lingerie; (j) discarded condoms and lubricants, and

Based on the above, K.H. filed her one-count Complaint against Riti, alleging that Riti violated the civil beneficiary provision of the TVPRA, 18 U.S.C. § 1595(a). *See* 18 U.S.C. § 1595(a) (stating that a sex trafficking victim "may bring a civil action against . . . whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of the" TVPRA.) The district court dismissed her complaint, holding that she failed to plausibly allege a necessary element of her claim—that Riti took part in a common undertaking or enterprise with Laye. K.H. appealed.

## II.     Standard of Review

"We review *de novo* a dismissal of a complaint for failure to state a claim[.]" *Henderson v. McMurray*, 987 F.3d 997, 1001 (11th Cir. 2021). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## III.     Discussion

On appeal, K.H. argues that the district court erred in granting Riti's motion to dismiss because K.H. plausibly alleged

---

(k) use of websites with adult classified ads and possessing few personal belongings.

that (1) Riti participated in a common undertaking or enterprise with Laye, and (2) Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.  After review, we affirm the district court and hold that K.H. did not plausibly allege that Riti participated in a common undertaking or enterprise.  Because our holding that K.H. failed to plausibly allege that Riti participated in a common undertaking or enterprise is dispositive of the case, we need not decide whether Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.

Our analysis begins with the text of the civil remedy provision of the TVPRA, which provides that a sex trafficking victim may bring a civil action for damages against the perpetrator "or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter . . . ."  18 U.S.C. § 1595(a).  K.H.'s claim against Riti is not a claim against a perpetrator.  Rather, it is a claim against a party that allegedly "knowingly benefit[ed]" or "attempt[ed] or conspire[d]" to benefit from sex trafficking.  *Id.*  These types of claims under the TVPRA are known as beneficiary claims.  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021).

We have said that, to state a civil beneficiary claim under the TVPRA, a plaintiff must plausibly allege that the defendant:

(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726. The dispute here largely revolves around the second element.[5]

Our only published case discussing the second element is *Red Roof*, 21 F.4th 714. In *Red Roof,* the plaintiffs alleged that they were trafficked at the hotels that the franchisors licensed to franchisees, and that the franchisors knowingly benefitted from the percentage of rental revenue that they received from the rooms rented by the traffickers. *Id.* The plaintiffs also alleged (1) that hotel employees assisted in the trafficking by acting as police lookouts; (2) that one of the franchisors sent inspectors to examine the hotel; (3) that plaintiffs exhibited several visible signs of a sex trafficking victim; and (4) that online reviews of the hotel "reported widespread prostitution and crime occurring at the hotel." *Id.* at 719–20. Thus, the plaintiffs alleged "that the franchisors participated in sex trafficking ventures" with "hotel employees,

---

[5] Riti argues that we should use the framework the district court used to determine whether K.H. satisfies the second element. That test is whether K.H. alleged that Riti and Laye had (1) a "direct association" or (2) a "continuous business relationship." Because this test is not set out in the statute or described in our caselaw, we decline to follow it.

management, owners, and sex traffickers." *Id.* at 726 (quotations omitted).

We held that the plaintiffs had not plausibly alleged that the franchisors took part in a common sex trafficking undertaking or enterprise. *Id.* at 726–27. While the franchisors managed and "were inextricably connected to the renting of rooms," financially benefitted from renting those rooms to traffickers, and trained the managers who served as police lookouts, we held that these allegations were insufficient to allege a common sex trafficking undertaking or enterprise. *Id.* We similarly found insufficient the allegations that the franchisors investigated the hotels and read online reviews describing prostitution and crime at the hotels. *Id.* at 727. We held that "observing something is not the same as participating in it." *Id.*

K.H.'s allegations are much like the allegations we found inadequate in *Red Roof*. K.H. alleges that Riti participated in a common sex trafficking undertaking with Laye because (1) Riti knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) Riti continued to engage in a hotel business relationship with and collect room rental revenue from Laye for approximately four years. Thus, just like in *Red Roof*, K.H. has not plausibly alleged that Riti took part in a common sex trafficking undertaking or enterprise with Laye.

K.H. argues that *Red Roof* is distinguishable because that case was brought against franchisors, while this case was brought

against a franchisee.  According to K.H., unlike Riti, the franchisors in *Red Roof* did not physically rent the rooms to the sex traffickers, they just received a percentage of the revenue from those rentals. But this distinction does little work for K.H. because the franchisors in *Red Roof* "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms." 21 F.4th at 726–27.  The difference between physically renting the rooms (based on the facts of this case) and "controll[ing] the operation of" renting the rooms (based on the facts of *Red Roof*) is immaterial.

Nonetheless, K.H. argues that *Red Roof* suggested that the difference between a franchisor and franchisee is significant. Indeed, K.H. argues that *Red Roof* establishes that if the claim had been against the hotel operators, rather than the franchisors, the plaintiffs would have a plausible claim.  In support of this argument, K.H. first points out that, in *Red Roof*, we cited with approval *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).  In that case, the First Circuit found a plausible TVPRA claim against motel operators based on allegations that the trafficker "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit" and that, by renting a room to the abuser, the operators were "associating with him in an effort to force [the plaintiff] to serve their business objective."  *Id.* at 555.

K.H. is correct that we noted in passing that "the[] kinds of allegations" in *Ricchio* would support a finding that a hotel operator participated in a sex trafficking venture.  21 F.4th at 726.  But the

allegations in *Ricchio* were far stronger than just an operator renting rooms to a trafficker. For example, in *Ricchio*, the trafficker and the motel operator—who were a husband and wife that lived in the motel themselves—"had prior commercial dealings . . . , which the parties wished to reinstate for profit." 853 F.3d at 555. In fact, the motel operator and the trafficker "exchang[ed] high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [plaintiff] as a sex slave had become apparent to [the operator]." *Id.* And the operator had "nonchalantly ignored [plaintiff's] plea for help in escaping from [the trafficker's] custody at the motel" and likely seen the trafficker "grab [plaintiff], kick [plaintiff], and force [plaintiff] back toward the rented quarters . . . ." *Id.* So it was under these circumstances that the First Circuit held that it was reasonably inferable that the motel operator and trafficker were working together "to force [plaintiff] to serve their business objective." *Id.*

Thus, these are "the[] kinds of allegations" we said would support a finding that a hotel operator participated in a sex trafficking venture in *Red Roof*. 21 F.4th at 726. Against this measuring stick, K.H.'s allegations come up short. K.H.'s allegations amount to contentions that Riti financially benefitted from renting hotel rooms to K.H.'s trafficker and that Riti observed signs of sex trafficking at the hotel. But as we made clear in *Red Roof*, allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture

and observing signs of sex trafficking "is not the same as participating in it." *Id.*[6]

Accordingly, because K.H. failed to plausibly allege that Riti participated in a common sex trafficking undertaking or enterprise with Laye,[7] the district court did not err in granting Riti's motion to dismiss.

**AFFIRMED.**

---

[6] K.H. also points to a sentence in the separate concurring opinion in *Red Roof*, that "similar claims against those who own, operate, or manage the hotels in question (e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss." 21 F.4th at 729 (Jordan, J., concurring). Aside from being dicta in a concurring opinion, this statement was made in the context of the particular facts of *Red Roof*. In *Red Roof*, the plaintiffs alleged more than that hotel employees had rented rooms to traffickers, they alleged that hotel employees worked directly with traffickers by providing lookouts in exchange for cash or drugs. 21 F.4th at 720. K.H. has not alleged such involvement between hotel employees and traffickers here. So, the *Red Roof* concurrence does not support K.H.'s claim either.

[7] Because our holding on this issue disposes of K.H.'s claim, we need not reach the second issue raised on appeal—whether Riti knew or should have known that the venture with Laye violated the TVPRA as to K.H.